UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VIVIAN FISHER, individually and as Personal Representative of the Estate of HOWARD LEROY FISHER, deceased, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CASE NO. C09-5146BHS <br><br> ORDER GRANTING PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY |

This matter comes before the Court on Plaintiffs' "Motion to Exclude Opinion Testimony of Scott Kush Pursuant to *Daubert*" (Dkt. 38). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants Plaintiffs' motion to exclude for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This case involves an incident that occurred on April 27, 2007, in which Plaintiff Harold Leroy Fisher ("Mr. Fisher") was killed in an automobile accident when the driver of the Veterans Administration van in which he was riding struck a tree on the side of the road. Defendant United States of America (the "Government") has stipulated that it is liable for the accident. Dkt. 24. On August 26, 2010, Scott Kush, J.D., M.D. ("Dr. Kush") testified as an expert witness in this action through video-taped testimony, including cross-examination by counsel for Plaintiffs. Dr. Kush's testimony mostly consisted of his opinion of Mr. Fisher's life expectancy had he not been killed in the

automobile accident. On September 7, 2010, Plaintiffs filed their motion to exclude the opinion testimony of Dr. Kush pursuant to Rules 702 and 703 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ("*Daubert I*"). Dkt. 38. On September 10, 2010, the Government filed its response to the motion (Dkt. 42) and on September 13, 2010, Plaintiffs replied (Dkt. 44).

On September 14, 2010, the trial commenced in this action. After the Government concluded its case on the second day of trial, the Court heard oral arguments on the motion to exclude. The Court informed the parties that it would hear the video-taped testimony of Dr. Kush in chambers and reserved ruling on the motion to exclude until after the trial was completed.

## II. DISCUSSION

Rule 702 of the Federal Rules of Evidence permits witnesses qualified as experts by "knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" about "scientific, technical, or other specialized knowledge" if the knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The expert's testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods." *Id*. Furthermore, the expert must apply these "principles and methods reliably to the facts of the case." *Id*.

In *Daubert I*, the Supreme Court held that trial courts must act as "gatekeepers" and decide whether to admit or exclude expert testimony under Rule 702. 509 U.S. at 589. Rule 702 permits a flexible, fact-specific inquiry that embodies the twin concerns of reliability and helpfulness. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. at 150-51. The test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Down Pharm.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (*"Daubert II"*). The test for helpfulness is essentially a relevancy inquiry. *See Daubert I*, 509 U.S. at 591 ("Expert testimony which does not related to any issue in the case is not relevant and, ergo, nonhelpful." (internal quotation marks omitted)).

1  Accordingly, under Rule 702, trial courts may exclude testimony that falls short of
2  achieving either of the rule's dual concerns.

**A.    Qualifications**

Plaintiffs do not explicitly argue that Dr. Kush is unqualified to render an expert opinion. Plaintiffs' main concern with Dr. Kush's testimony is the reliability of his methodology. *See generally* Dkt. 38. However, in their motion to exclude, Plaintiffs state that Dr. "Kush holds his MD degree and his JD from Stanford, but he has never practiced medicine or law (nor is he licensed to do so in any state)." Dkt. 38 at 2 (citing Dkt. 39 at 6). Further, Plaintiffs state that Dr. Kush "is attempting to start a career as a 'litigation consultant' in personal injury and wrongful death cases, wherein his only role is to shorten or lengthen the plaintiff or decedent's life expectancy, depending on whether he has been retained by defense or plaintiffs' counsel, respectively." *Id*. at 2-3 (internal footnote omitted).

In support of its response to the motion to exclude, the Government filed a declaration by Dr. Kush that describes his qualifications as an expert witness. Dkt. 43. Dr. Kush states that he obtained a Master's Degree in Public Health from San Diego State University in 1995, a Juris Doctorate from Stanford University School of Law in 2000, and an M.D. Degree from Stanford University School of Medicine in 2004. Dkt. 43 at 1. He states that he is a "medical researcher who studies life expectancy, causes of death, and other epidemiological topics." *Id*. Dr. Kush goes on to explain his work as a researcher with a group called "The Life Expectancy Project" and lists five studies on life expectancy in which he was a co–author. *Id*. at 2. He represents that he has provided expert witness deposition testimony on life expectancy eighteen times and that he has testified in court as an expert on life expectancy on five occasions. *Id*. at 2-3.

Based on Dr. Kush's education and his representations of his research and experience in the area of life expectancy, the Court concludes that his qualifications are generally sufficient to consider him an expert witness. However, the Court's inquiry does

not end there.  Under Rule 702, the Government must demonstrate that Dr. Kush's methodology is both reliable and helpful in this case.

**B.     Reliability**

Plaintiffs argue that Dr. Kush's testimony should be excluded because "[h]is opinions are based on insufficient facts and data, his conclusions are not the product of reliable principles or methods, and Dr. Kush has not applied his own principles and methods in a reliable manner."  Dkt. 38 at 6.  In addition, Plaintiffs assert that Dr. Kush's work has never been tested or subjected to peer review, that there is no known error rate for his calculations and that there are no standards controlling his application of the techniques he uses.  *Id*. at 6-7.  Finally, Plaintiffs state that "it is no surprise that Dr. Kush's work had not achieved general acceptance in the relevant scientific community."  *Id*. at 7.  The Government maintains that "Dr. Kush's conclusions about Mr. Fisher's life expectancy employ standard and generally-accepted scientific methods routinely used by other researchers and scientists concerned with life expectancy."  Dkt. 42 at 5.  Moreover, the Government asserts that Dr. Kush's life expectancy methodology satisfies all of the *Daubert* principles and is both reliable and credible as a matter of law.  *Id*. at 7.

"[N]ot only must the trial court be given broad discretion to decide *whether* to admit expert testimony, it 'must have the same kind of latitude in deciding *how* to test an expert's reliability.'"  *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (quoting *Kumho Tire*, 526 U.S. at 152).  The Court must "analyze not what the experts say, but what basis they have for saying it."  *Daubert II*, 43 F.3d at 1316.  Although the *Daubert* factors were not intended to apply in every case or be an exhaustive list, a trial court may consider those factors "where they are reasonable measures of the reliability of proffered expert testimony."  *Hankey*, 203 F.3d at 1168.  The *Daubert* factors are:

> (1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community.

*Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002).

Plaintiffs maintain that Dr. Kush's testimony must be excluded because it fails to meet even the minimum admissibility requirements under *Daubert* and Rule 702. Dkt. 38 at 6. The Court agrees as discussed below.

### 1. Daubert Factors

Dr. Kush admits that his methodology of providing life expectancy calculations for individuals has not been and cannot be tested. Dkt. 39 at 16-18. Dr. Kush admits that his specific technique in creating life tables, like the one he created for Mr. Fisher, has not been subjected to peer review. *Id.* at 116. Dr. Kush appears to admit that there is no way to calculate an error rate for his work. *Id.* at 27. Dr. Kush asserts that his technique is generally accepted in the relevant scientific community. However, he provides no evidentiary support for this bald assertion. Moreover, Plaintiffs submitted the declarations of Dr. Franklin L. Murphy, M.D. ("Dr. Murphy") and Dr. James E. Lineback ("Dr. Lineback") in support of their motion to exclude.[1] Both Dr. Murphy and Dr. Lineback state that this methodology is in no way generally accepted in the medical community. *See* Dkts. 40 & 41.

Based on any of these factors alone, the Court would have serious concerns regarding the admissibility of Dr. Kush's testimony.

---

[1] The Government argues that the Court should disregard the declarations of Dr. Murphy and Dr. Lineback filed in support of Plaintiffs' motion to exclude because they are not qualified expert witnesses and because Plaintiffs did not disclose them. The Court disagrees. First, Plaintiffs are not attempting to offer the declarations as testimony for trial. The only purpose of Dr. Murphy and Dr. Lineback's declarations are to support Plaintiffs' motion to exclude. Further, the Court concludes that Dr. Murphy and Dr. Lineback's credentials qualify them as experts in the field of medicine (Dkts. 40 & 41) and that it is not necessary that they be experts in the specific field of life expectancy in order to qualify to comment on Dr. Kush's testimony. Although the Court will consider the declarations of Dr. Murphy and Dr. Lineback in deciding Plaintiffs' motion to exclude, the Court has come to the same conclusion regarding the reliability of Dr. Kush's testimony with or without these declarations.

### 2.     Evidence Rule 702

Under Rule 702, expert testimony will be excluded if it is based on insufficient data, if the testimony is the product of unreliable principles or methods, or if the expert fails to apply his principles or methods in a reliable manner.  Here, Dr. Kush's testimony can be excluded under all three of the Rule 702 standards.

Dr. Kush's testimony is based on insufficient data.  In Dr. Kush's declaration, he states that he "identified over forty-five relevant studies and books," in preparing his report for this case, and cited sixteen of them in the report.  Dkt. 43 at 6.  Dr. Kush states that "citing and discussing all studies and books would not have been helpful and even potentially overly burdensome to the reader," but states that he can provide them if the Court finds it necessary.  *Id*.  The main issue the Court has with Dr. Kush's reliance on these studies is that he appears to select one article for each condition on which he bases a reduction in Mr. Fisher's life expectancy with no explanation for doing so.  Rather than explaining how the current medical research in general supports his conclusion, he relies on one article and bases his conclusions on it, rather than all relevant research available.  For example, when Dr. Kush analyzes Mr. Fisher's coronary artery disease ("CAD"), he relies on the Emond article[2] which contains research on patients who were admitted to the study between 1974 and 1979.  *See* Dkt. 39 at 23-24.  Dr. Kush fails to sufficiently explain how his reliance on a study that involved patients admitted over thirty years ago is still the most relevant and reliable data on which he could base his opinion.  Therefore, the Court concludes that the Government has failed to show that Dr. Kush's testimony is based on sufficient data.

Even assuming Dr. Kush's testimony is based on sufficient data, his testimony is not the product of reliable principles and methods and he fails to apply his principles and methods in a reliable manner.

---

[2] Emond, et al., Long-term Survival of Medically Treated Patients in the Coronary Artery Surgery Study (CASS) Registry, Circulation, v. 90 no. 6 (December 1994).  Dkt. 39, Exh. D.

ORDER - 6

The Court's first main concern with Dr. Kush's methodology is the fact that he takes into account conditions, such as CAD, diabetes, and obesity in this case, that are already accounted for in the U.S. Life Tables.[3]  The U.S. Life Tables calculate life expectancy based on a person's sex and gender and obviously include people that have common ailments such as CAD, diabetes, and obesity.  Dr. Kush begins with the U.S. Life Table's life expectancy figures and then subtracts a certain number of years for each condition that Dr. Kush states decreases Mr. Fisher's life expectancy (6.8 years for CAD, 1.3 years for Type II Diabetes, and .4 years for a BMI of 31.1).  *See* Dkts. 40 & 41.  The problem lies in Dr. Kush's failure to explain how it is a proper methodology to begin with numbers that are an average of people's life expectancies, some of whom suffer from the same conditions that Mr. Fisher did.

The Court's second concern with Dr. Kush's methodology is his double and triple counting of the conditions he uses in calculating the deduction in Mr. Fisher's life expectancy.  Dr. Kush found that CAD, Type II Diabetes, and obesity each would have deducted time from Mr. Fisher's life expectancy.  However, as the Plaintiffs point out, Dr. Kush does not appear to take into account the fact that these three diseases are often interrelated and that counting each one separately, when for example someone with type II diabetes is often also obese, is inappropriate.  Dr. Kush does not give a sufficient explanation to convince the Court that this method of attributing a deduction of time for each of these diseases without considering their relation to one another is proper.  *See* Dkt. 43 at 10.

The Court also has serious concerns regarding the application of Dr. Kush's methodology in choosing which factors to consider and which factors not to consider in calculating a person's life expectancy.  In his declaration, Dr. Kush describes his

---

[3] Arias E (2006).  United States Life Tables, 2003.  National Vital Statistics Reports, Volume 54, Number 14.  Hyattsville, Maryland: National Center for Health Statistics.  Dkt. 39 at 33 (Dr. Kush's Report citing to the U.S. Life Tables he used in calculating Mr. Fisher's life expectancy).

ORDER - 7

methodology in choosing which factors to consider in calculating life expectancy as "reviewing hospital discharge summaries, records of treating or examining physicians, reports of experts, deposition transcripts of experts, treating physicians, family members or other care givers to understand Mr. Fisher's medical history, past medical conditions, and to determine his medical risk factors." Dkt. 43 at 3.  When Dr. Kush states that he reviews these different items to determine Mr. Fisher's medical risk factors, he does not explain that this process consists of subjectively picking and choosing which medical risk factors he believes are relevant to Mr. Fisher's life expectancy.  The Court adopts Dr. Murphy's common sense observation on the issue of Dr. Kush's application of his methodology:

> Dr. Kush is not predictable in his application of his flawed, baseless methodology.  Dr. Kush starts with the average life expectancy for a man of Mr. Fisher's age, 14.9 additional years, and then subtracts from there.  Dr. Kush selectively chooses three negative risk factors from among the many factors impacting life expectancy, and makes a downward adjustment based on those three factors alone.  There does not appear to be any rhyme or reason behind his decision to focus on these negative factors, while, at the same time, ignoring other factors (including positive ones).  By his own admission, Dr. Kush has chosen to ignore two of the most important factors pertaining to life expectancy: diet and exercise.  Were he to consider these factors (or others), his analysis would necessarily yield a different result.  Dr. Kush's conclusions are a function of the data he has chosen to consider, and his decision regarding which data to consider (and which to ignore) appears to have been wholly subjective.

Dkt. 41 at 5.

Each of the concerns the Court has with Dr. Kush's research, methodology, and application is sufficient on its own to exclude his testimony.  Taken as a whole, the Court finds that Dr. Kush's testimony is not in the least helpful such as would warrant deviation from the U.S. Life Tables for the purpose of determining life expectancy for Mr. Fisher.  Therefore, for the reasons discussed herein, the Court concludes that Dr. Kush's testimony is excluded under the *Daubert* factors and Rule 702.

### III. ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion to exclude Dr. Kush's testimony (Dkt. 38) is **GRANTED**.

DATED this 28th day of September, 2010.

BENJAMIN H. SETTLE
United States District Judge